# PD-1426-15

PD-1426-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/5/2015 1:58:04 PM
Accepted 11/5/2015 3:27:33 PM
ABEL ACOSTA
CLERK

NO. PD-_____

TO THE COURT OF CRIMINAL APPEALS OF TEXAS

**Brian Hart, Appellant**

**v.**

**The State of Texas, Appellee**

*************

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

****************

FROM THE COURT OF APPEALS

SECOND APPELLATE DISTRICT OF TEXAS

FORT WORTH, TEXAS

NO. 02-14-00268-CR

TARRANT COUNTY

TRIAL COURT NO. 1365673

FILED IN
COURT OF CRIMINAL APPEALS

November 5, 2015

ABEL ACOSTA, CLERK

R. Scott Walker

STATE BAR # 24004972

222 W. Exchange Avenue

Fort Worth, TX 76164

(817) 478-9999

(817) 977-0163 FACSIMILE

scott@lawyerwalker.com

Attorney for Appellant

<u>**Oral Argument Not Requested**</u>

1

## IDENTITY OF TRIAL JUDGE, PARTIES, AND COUNSEL

The following is a complete list of all parties, the trial judge, as well as the names and addresses of all counsel.

| | |
|---|---|
| Trial Judge: | Hon. Mollee Westfall<br>Hon. Roger Towery |
| Appellant: | Brian Hart |
| Trial Counsel: | Kathy Lowthorp<br>Attorney at Law<br>P.O. Box 13575<br>Arlington, Texas 76094 |
| Appellate<br>Attorney for Appellant: | R. Scott Walker<br>Attorney at Law<br>222 W. Exchange Avenue<br>Fort Worth, Texas 76164 |
| Appellee: | The State of Texas |
| Trial<br>Attorney for Appellee: | Tracey Kapsidelis &<br>Rebecca McIntire<br>Tarrant County Assistant<br>District Attorney<br>401 W. Belknap<br>Fort Worth, Texas 76196 |
| Appellate<br>Attorney for Appellee: | Deborah Windsor<br>Tarrant County<br>District Attorney<br>401 W. Belknap<br>Fort Worth, Texas 76196 |

## TABLE OF CONTENTS

PAGE

IDENTITY OF TRIAL JUDGE, PARTIES, AND COUNSEL. .  2

TABLE OF CONTENTS . . . . . . . . . . . . . . . . 3

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . 4

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . 4

STATEMENT OF THE CASE . . . . . . . . . . . . . . . 5

STATEMENT OF PROCEDURAL HISTORY OF THE CASE. . . 6

QUESTION PRESENTED . . . . . . . . . . . . . . . 6

ARGUMENT (Evidence of Defendant's status as a

    sex offender should have been excluded.). . . 6

PRAYER . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF SERVICE . . . . . . . . . . . . . 15

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . 15

APPENDIX. . . . . . . . . . . . . . . . . . . . . 16

# INDEX OF AUTHORITIES

## CASES

*Montgomery v. State,*
810 S.W.2d 372 (Tex.Crim.App. 1991). . . . . 7, 8

*Mozon v. State,*
991 S.W.2d 841 (Tex.Crim.App. 1999) . . . . . 8

*Robles v. State,*
85 S.W.3d 211 (Tex.Crim.App. 2002). . . . . . 7

## STATUTES

*Texas Rules of Evidence,*
§609. . . . . . . . . . . . . . . . . . . . 11

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument of this case is hereby not requested on behalf of Appellant.

All references to Texas statutes, rules, etc. are references to the latest edition published by West Publishing Company, unless otherwise indicated.

BRIAN HART, Appellant-Applying for Review

V.

THE STATE OF TEXAS, Appellee

\*\*\*\*\*\*\*\*\*\*\*\*

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

\*\*\*\*\*\*\*\*\*\*\*\*

TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

## STATEMENT OF THE CASE

This appeal has resulted from a criminal prosecution for arson. On June 3, 2014, Appellant pled not guilty to the offense. On June 4, 2014, after evidence was presented, the jury found Defendant guilty. The jury set punishment at three years confinement. (C.R., Vol.1 p.154).

**STATEMENT OF PROCEDURAL HISTORY OF THE CASE**

The Court of Appeals rendered its decision and delivered its written non-published memorandum opinion on October 8, 2015. The deadline for filing a Petition for Discretionary Review is November 9, 2015.

**QUESTION PRESENTED**

Whether the trial judge erred by admitting evidence of Defendant's status as a sex offender into evidence during the punishment phase of the trial.

**ARGUMENT**

APPLICABLE LAW: Rule 401 of the Texas Rules of Evidence makes it clear that evidence is relevant if it makes the existence of a fact that is of consequence to the determination of the action more probable than it would be without the evidence. However, even relevant evidence may not be admissible for every purpose. Because of the fact that our system of justice recognizes that a defendant should be tried only for the charged

6

crime and not for his criminal propensities, evidence of extraneous offenses is normally inadmissible. *Robles v. State*, 85 S.W.3d 211,213 (Tex.Crim.App. 2002). However, Rule 404(b) allows evidence of other crimes, wrongs, or acts if the evidence has relevance apart from character conformity. Evidence of other crimes, wrongs or acts may be admissible to prove identity or intent, to establish motive, or to show opportunity or preparation. *Montgomery v. State,* 810 S.W.2d 372, 387-88 (Tex.Crim.App. 1991)(opinion on rehearing). Rebuttal of a defensive theory is one of the permissible other purposes for which relevant evidence may be admitted under Rule 404(b). However, any evidence permissible under 404(b) may still be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim.App. 1991)(opinion on rehearing). If a court determines that evidence of a prior bad act is evidence that is relevant under 404, then the court is to do a balancing test to

determine if the probative value is substantially outweighed by the danger of unfair prejudice. *Mozon v. State,* 991 S.W.2d 841, 846 (Tex.Crim.App. 1999). The balancing test is comprised of four factors: (1) how compelling the extraneous offense evidence serves to make a fact of consequence more or less probable; (2) the potential that the other offense evidence has to impress the jury in some irrational but nevertheless indelible way; (3) the time the proponent will need to develop the evidence; (4) whether the proponent has other available evidence to establish the fact of consequence that the extraneous misconduct is relevant to show. *Mozon v. State,* 991 S.W.2d 841, 847 (Tex.Crim.App. 1999), *Montgomery v. State,* 810 S.W.2d 372, 389-390 (Tex.Crim.App. 1991). A trial court's determination as to the admissibility of evidence under 403 is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1991)(opinion on rehearing).

ANALSIS: The Court of Appeals correctly ruled that the admission of the complained of evidence in the guilt/innocence phase of trial was error. However, the Appeals Court went on to say that the error was harmless because the same evidence was correctly admitted in the punishment phase of trial. (Opinion p. 2). The analsis was that the probative value of impeachment of Appellant outweiged the danger of unfair prejudice under 403. (Opinion p. 4-5). The Appeals Court failed to see the enormous degree of prejudice created by telling the jury that Appellant was a convicted sex offender.

The defense theory in this arson case was the defense of necessity. (C.R. P. 135). The Defendant testified at the guilt/innocence phase of trial. He admitted that he set a small fire in the bathroom of his motel room. (R.R. Vol. 4 p. 79). However, his testimony was that he had a seizure which caused him to have delusions that some people were trying to get into the room to kill him. He then set the fire for the purpose of causing a

smoke detector to be activated so emergency personnel would come and save him. (R.R. Vol. 4 p. 58-86).

Prior to any testimony, Defense Counsel presented a motion in limine to the court. The motion dealt with testimony from police that the Defendant told them that he was a registered sex offender. The argument was that the Defendant's status as a registered sex offender was evidence of a conviction for a sex offense, and would be extremely prejudicial to the Defendant. The State argued that the evidence should come in because it was evidence of the Defendant's state of mind or motive. The trial judge denied the motion in limine. (R.R. Vol. 3, p. 8-16). When the evidence was offered, Defense Counsel objected, and the objection was overruled. (R.R. Vol. 3, p. 200). Again, the Court of Appeals correctly ruled that this ruling was error.

Again, the Court of Appeals ruled that the evidence was admissible in punishment because it was probative for impeaching Appellant. The

10

evidence was extremely prejudicial and the prejudice substantially outweighed the probative value. There is no doubt that jurors are extremely prejudiced toward sex offenders. As soon as a juror learns that a defendant is a registered sex offender, he or she is ready to vote guilty regardless of whether the case has been proven beyond a reasonable doubt. Allowing sex offender evidence creates a situation in which a jury is likely to render a verdict in an irrational but nevertheless indelible way. Therefore, the second *Montgomery/Mozon* factor definitely favors inadmissability. The enormous degree of prejudice created by telling the jury that Appellant was a convicted sex offender far outweighed any probative value.

Rule 609 of the Texas Rules of Evidence states, "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record, but only if the cime was a felony or involved moral

turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party." Under 609, the Defendant does not need to show that unfair prejudice *substantially* outweighs the probative value. The evidence would be inadmissible under 609 if the prejudicial effect is merely equal to the probative value. There is no need for reiterating the prior argument as to how extreme the prejudicial effect is when evidence is admitted of a sexually-related offense. However, the probative value here relates to how much the conviction attacks the credibility of the Defendant. In this case, the conviction does little to attack the credibility of the Defendant, because the State actually adopted, to a large extent, the Defendant's testimony. In closing, the State agreed that the Defendant was delusional and paranoid. (R.R. Vol. 4, p. 220). The prosecution also stated in closing that the officers and firefighters at the scene understood that the Defendant was not really grounded in reality that

12

night. (R.R. Vol. 4, p. 221). The State even told the jury that they all knew that the Defendant was delusional and paranoid. (R.R. Vol. 4, p. 222). The State also agreed with the Defendant's testimony that he had intentionally failed to take his seizure medication. (R.R. Vol. 4, p. 220). The only part of the Defendant's testimony that the State questioned is whether the Defendant told officers and paramedics that he had had a seizure that morning. (R.R. Vol. 4, p. 222). The primary focus of the State's close was that the Defendant admitted that he intentionally failed to take his seizure medication and that doing so was not a reasonable thing to do because doing so could cause a seizure. Therefore, the probative value of the prior sexually-related conviction for the purpose of attacking the credibility of the Defendant was minimal at best, while the prejudicial effect was enormous. The probative value certainly did not outweigh the prejudicial effect. The ruling was in error and was an abuse of discretion.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Brian Hart, Appellant, prays that the case be reversed or for whatever other relief he has shown himself entitled.

Respectfully Submitted,


S/Scott Walker

By: R. Scott Walker
Attorney for Appellant
222 W. Exchange Avenue
Fort Worth, Texas 76164
(817) 478-9999
(817) 977-0163 FAX
State Bar No. 24004972


## **CERTIFICATE OF SERVICE**

A copy of this petition was served by first class mail to the Office of Criminal District Attorney, Tarrant County Courthouse, 401 W. Belknap, Fort Worth, Texas 76196 and to the State Prosecuting Attorney at P.O. Box 12405, Austin, Texas 78711 on the 5th day of November, 2015.

s/Scott Walker
R. Scott Walker

## **CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the length requirements as set forth by the Texas Rules of Appellate Procedure in that this document contains 2,041 words, and that the document is in 14 point type.

s/Scott Walker

R. Scott Walker

# APPENDIX



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00268-CR

BRIAN HART                                                        APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

## FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1365673R

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

A jury convicted appellant Brian Hart of arson and assessed his punishment at three years' confinement.[2]  In a single issue, Hart complains that

---

[1]*See* Tex. R. App. P. 47.4.

[2]Arson is a state jail felony with a punishment range of 180 days' to two years' confinement, but its punishment range can be enhanced by prior felony convictions to the two-to-twenty-year punishment range of a second-degree

the trial court's two admissions of evidence of his sex offender status during the guilt-innocence phase of trial were extremely prejudicial and likely caused him to be convicted of arson "solely because he is a sex offender." We conclude that while the trial court erred by admitting the evidence in one instance, as set out below, that the instance was harmless in light of the subsequent proper admission of similar evidence.[3] *See Anderson v. State,* 717 S.W.2d 622, 627 (Tex. Crim. App. 1986). Further, even if both had been admitted in error, neither affected Hart's substantial rights. *See* Tex. R. App. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). Therefore, we affirm.

## II. Background

Much of the evidence in this case was undisputed. For example, no one disputed that Hart set a fire in his hotel room or that he suffered from seizures.

---

felony. *See* Tex. Penal Code Ann. § 12.33 (West 2011) (second-degree felony punishment range), § 12.425 (West Supp. 2014) (penalties for repeat and habitual felony offenders on trial for state jail felony). Hart's indictment contained an enhancement paragraph regarding his prior felony convictions of failure to comply with sexual offender registration requirements on August 10, 2004, and indecency with a child by fondling on June 17, 1996. Hart pleaded true to the enhancement paragraph, and the jury found that paragraph true, elevating Hart's punishment range to that of a second-degree felony.

[3]Three different judges presided over this matter during the three-day trial. A Tarrant County magistrate judge conducted voir dire on the first day. The sitting district judge presided during the second day of trial, and a retired judge sitting by assignment presided during the final day of trial, which included a portion of the guilt-innocence phase.

2

The issue before the jury was whether the defense of necessity applied based on Hart's post-seizure hallucination that people were after him and that he needed to draw the attention of rescuers by setting the fire.

## III. Discussion

Hart complains that the admission of Arlington Police Officer David Todd's recitation of Hart's statement about being a sex offender and the evidence of Hart's conviction for failure to register as a sex offender during the guilt-innocence phase of the trial were substantially more prejudicial than probative and ultimately harmful in that the jury convicted him of arson.

### A. Impeachment

Hart elected to testify, and the State offered evidence of Hart's criminal history, including a prior conviction for failure to register as a sex offender, during Hart's testimony. Prior to tendering the evidence, in a conference outside the jury's presence, the State argued that Hart's failure-to-register conviction was admissible impeachment evidence that went not only to Hart's credibility but also to his motive, intent, preparation, plan, knowledge, identity, absence of mistake, or accident and to show his clarity of mind at that time. Hart argued that the failure-to-register conviction was not a crime of moral turpitude, that it was irrelevant, and that its highly prejudicial nature outweighed any probative value under rule 403. The trial court overruled Hart's objections, and after the evidence

was introduced, Hart requested a running objection, which the trial court granted.[4]

Rule of evidence 609(a) generally provides that evidence of a criminal conviction is admissible if the court determines that its probative value outweighs its prejudicial effect. Tex. R. Evid. 609(a). The State argued at trial, as it does here, that Hart's failure-to-register conviction was probative as to Hart's credibility.

In reviewing the trial court's conduct in balancing the probative value of the evidence against its prejudicial effect, we must accord the trial court "wide discretion." *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992). A ruling permitting use of a prior conviction to impeach will be reversed on appeal only upon a showing of a clear abuse of discretion. *Id.* Only if the trial court's decision falls outside the "zone of reasonable disagreement" has it abused its discretion. *Id.*; *Miller v. State*, 196 S.W.3d 256, 267 (Tex. App.—Fort Worth 2006, pet. ref'd).

A nonexclusive list of factors to consider in weighing the probative value of a conviction against its prejudicial effect includes (1) the past crime's impeachment value, (2) the past crime's temporal proximity relative to the charged offense and the witness's subsequent history, (3) the similarity between the past crime and the offense being prosecuted, (4) the importance of the

---

[4]The trial court also admitted Hart's conviction for possession of methamphetamine.

4

defendant's testimony, and (5) the importance of the credibility issue. *Theus*, 845 S.W.2d at 880. The impeachment value of crimes that involve deception is higher than those involving violence, while those involving violence have a higher prejudicial potential. *Id.* at 881. Temporal proximity favors admission if the past crime is recent and the witness has demonstrated a propensity for running afoul of the law, while if the past crime and charged crime are similar, this weighs against admission because similarity suggests the possibility that the jury could convict on the perception of a pattern of past conduct rather than on the facts of the charged offense. *Id.* When the case involves the testimony of only the defendant and the State's witnesses, the importance of the defendant's credibility and testimony escalates and weighs in favor of admission. *Id.*

Because Hart's failure to register as a sex offender worked to conceal the address at which he resided or intended to reside, the offense was a crime involving deception. *See Tristan v. State*, 393 S.W.3d 806, 813–14 (Tex. App.— Houston [1st Dist.] 2012, no pet.) (holding that failure to register as a sex offender is "a crime of deception" and "a significant piece of evidence" bearing on a defendant's character for truthfulness under rule 609); *see also Robertson v. State*, 685 S.W.2d 488, 492 (Tex. App.—Fort Worth 1985, no pet.) (holding that a crime involving dishonesty is relevant to the credibility of a witness). This factor weighs in favor of admission, as does the fact that the failure-to-register offense and the charged arson offense were not similar. *See Theus*, 845 S.W.2d at 881.

5

However, the failure-to-register offense was several years old; this factor weighs against admission.  *See id.*

The last two factors under *Theus* are related in that they both depend on the nature of a defendant's defense and the means available to him of proving that defense.  *See id.*  Hart's necessity defense hinged upon whether the jury believed his contention that he set the fire in an attempt to summon aid while suffering from a delusion that people were trying to attack him.  Hart testified to this, as did Dr. Roger Blair, an expert who opined that he had no doubt that Hart had been psychotic and suffering from delusions that were very real to him at the time he set the fire, none of which would seem out of the ordinary, given Hart's mental condition at the time.  When the case involves the testimony of only the defendant and the State's witnesses, the importance of the defendant's credibility and testimony escalates, as will the need to allow the State the opportunity to impeach his credibility.  *See id.*  Although Hart also had an expert witness testify in support of his defense, because Hart had to confess to the offense in order to use the necessity defense,[5] his credibility and character for veracity were directly in issue.  *See Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010).  Therefore, these factors weigh in favor of admission.  *See Theus*, 845 S.W.3d at

---

[5]The confession-and-avoidance doctrine applies to the necessity defense, requiring a defendant to admit the conduct—both the act and the culpable mental state—of the charged offense to be entitled to a necessity instruction.  *Juarez v. State*, 308 S.W.3d 398, 399, 405 (Tex. Crim. App. 2010); *see* Tex. Penal Code Ann. § 1.07(a)(10) (West Supp. 2014) (defining conduct to mean an act or omission and its accompanying mental state).

881. We conclude that because the majority of the factors under *Theus* favor admission, the trial court did not abuse its discretion by admitting Hart's failure-to-register conviction.[6] *See id.*; *see also Tristan*, 393 S.W.3d at 814; *Theragood v. State*, No. 08-10-00013-CR, 2011 WL 3848840, at *4–7 (Tex. App.—El Paso Aug. 31, 2011, no pet.) (not designated for publication).

## B. Relevance

Hart also complains about the admission of Officer Todd's testimony relating Hart's statement at the scene about being a sex offender. Officer Todd testified that Hart told him that

> he had been in the room with two females that he didn't know the names of, and *he advised that the females had somehow found out that he was a sex offender*, and he didn't know how they found out, but he said that they left and that they returned with two males and that the males began pounding and kicking the door, and that after— or whenever they started pounding and kicking the door, he went to the bathroom, shut the door, and lit toilet paper on fire to get the attention of [the police] and the fire department. [Emphasis added.]

---

[6]Further, the trial court included an instruction in the jury charge with regard to the use of Hart's prior convictions that either eliminated or reduced the potential that the jury would use this evidence in an impermissible manner because we generally presume that juries follow the trial court's instructions in the manner presented. *Kirk v. State,* 199 S.W.3d 467, 479 (Tex. App.—Fort Worth 2006, pet. ref'd); *see Young v. State,* 283 S.W.3d 854, 882 (Tex. Crim. App. 2009) (Cochran, J., concurring) ("We must, however, 'presume[] that jurors, conscious of the gravity of their tasks, attend closely [to] the particular language of the trial court's instructions in criminal cases and strive to understand, make sense of, and follow the instructions given them.'") (quoting *Francis v. Franklin,* 471 U.S. 307, 324 n.9, 105 S. Ct. 1965, 1976 n.9 (1985)), *cert. denied*, 558 U.S. 1093 (2009); *Williams v. State,* 937 S.W.2d 479, 490 (Tex. Crim. App. 1996). Courts will abandon this presumption only if there is evidence showing that the jury did not follow the instructions. *Williams,* 937 S.W.2d at 490. There is no such showing here.

That is, Officer Todd testified that Hart's statement attributed the motivation of his would-be attackers to their belief that he was a sex offender.[7]

While Hart's objection to the evidence was summarily overruled without argument, earlier that day the trial court had permitted extended argument regarding the evidence in question when it considered but denied Hart's motion in limine. During the limine argument, Hart argued that the evidence was irrelevant, or alternatively, that any probative value was outweighed by its highly prejudicial effect. The State argued that the evidence was relevant to prove Hart's reason for setting the fire, his motive, his state of mind, and to rebut a claim of medical necessity. During the limine hearing, the trial court indicated that it would "allow it" because it went "directly to his state of mind" and to motive, which, the trial court stated, was "squarely an issue" in the case.[8]

It is undisputed that Hart's would-be attackers were not real, that they were a delusion. To the extent that Hart believed that these imaginary people were trying to kill him, evidence of this belief was probative of *Hart's* mental state and *Hart's* motive in setting fire to the hotel room. However, the evidence that the

---

[7]The testimony is ambiguous on this point. It is not clear from Officer Todd's testimony whether the imaginary men's belief that Hart was a sex offender was, in fact, correct or incorrect.

[8]While this court is aware that motions in limine do not preserve error, *see Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008), *cert. denied*, 555 U.S. 1105 (2009), the hearing on the motion in limine allowed both sides to flesh out their arguments for and against the admission of the evidence.

trial court admitted went one step too far. The mental state and motivations of Hart's hallucinations—whether greed, hatred, jealousy, animosity toward sex offenders, or a quest to save the planet—are wholly irrelevant[9] to any fact of consequence in this case. The fact of consequence here was whether Hart thought he was being attacked, not the motivation he attributed to his imaginary attackers.

## C. Harmless Error

Although the court erred by admitting Officer Todd's testimony, this error ultimately proved harmless. It is well-established that the improper admission of evidence becomes harmless error if the same facts are proved by other properly admitted evidence. *Land v. State,* 291 S.W.3d 23, 28 (Tex. App.—Texarkana 2009, pet. ref'd); *see also Anderson,* 717 S.W.2d at 627. As discussed above, Hart's conviction for failure to register as a sex offender was subsequently admitted into evidence, and we have held that the trial court committed no error by doing so; therefore, admitting Officer Todd's testimony on this point was subsequently rendered harmless.

Further, if, as here, the trial court's ruling merely offends the rules of evidence, such erroneous admission of evidence is nonconstitutional error

---

[9]Relevant evidence is that which has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable. *See* Tex. R. Evid. 401; *Hawkins v. State*, 871 S.W.2d 539, 541 (Tex. App.—Fort Worth 1994, no pet.) (citing *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (op. on reh'g)).

9

governed by rule 44.2(b). *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *see also Walters v. State*, 247 S.W.3d 204, 222 (Tex. Crim. App. 2007). Under rule 44.2(b), any error, defect, irregularity, or variance that does not affect the appellant's substantial rights must be disregarded. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon*, 49 S.W.3d at 365; *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

The evidence showed that Hart, who had been homeless prior to moving into the Caravan Motel, set a fire in his room in the early morning hours of August 24, 2013. The Caravan Motel is an older wood-framed, two-story hotel which

had been grandfathered-in under an older fire code. Fifteen to twenty occupants were in the structure at the time of the fire.

While Arlington Fire Department's deputy fire marshal classified the fire as small, he testified that it had the potential to be dangerous because it occurred at approximately 5:00 a.m., a time when the old hotel's occupants would likely be asleep, and the condition of the structure would cause the fire to burn quickly. One of the firefighters described the incident as a "heavy box response," meaning that more firefighting units would respond because it was a high occupancy building with a greater potential for victims.

Hart admitted that he intentionally set the fire but testified that he did so in an attempt to set off the smoke alarm and thereby summon help because he thought people were attempting to do him harm.[10] *See* Tex. Penal Code Ann. § 28.02(a-2)(1), (f) (West 2011) (stating that a person commits an offense if he intentionally starts a fire and recklessly damages or destroys a building belonging to another). The resulting fire caused damage to the bathroom door and the subfloor.

---

[10]Hart testified that he panicked and knew he needed help, but he had no ability to summon aid. According to Hart, because he did not have a cell phone and there was no phone in the hotel room, he thought, "[T]here's a smoke alarm in this room. If I make enough smoke, I'm going to get my help. People will come. I will -- I'll get my treatment. I'll be saved." So he lit some toilet paper on fire with a cigarette lighter and waited for help to arrive. Two firefighters and two police officers confirmed that Hart told them at the scene that he had lit toilet paper on fire so that help would come because he thought people were after him.

11

Both sides agreed that Hart's would-be attackers that evening were not real but were part of a delusion caused by Hart's failure to take his medication. Hart testified that while he had been prescribed anti-seizure, anticonvulsant medication, he had not taken his pills.[11] Hart explained that he had just started a new job and, because obtaining a prescription refill at Mission Arlington's free medical clinic would require him to wait in line for a full day, that he had been trying to make his medication last for as long as possible. Consequently, he was not taking his medication as often as prescribed.

The jury received limiting instructions during Officer Todd's testimony and in the court's charge with regard to the evidence in question, and we generally presume that the jury followed the trial court's instructions in the manner presented. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); *see also Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) (stating that the presumption that the jury followed the trial court's instructions is rebuttable but that the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instructions). The State embraced the limitations on the jurors' consideration of this evidence as early as voir dire when, in response to the question, "Can prior convictions be brought up as evidence?" posed by one of the veniremembers, the State explained,

---

[11]Hart was found with an unmarked bottle of white pills. Dr. Blair, the board-certified neurologist who reviewed Hart's medical records, confirmed that the medicine in Hart's medicine bottle was seizure medication that he had been prescribed.

12

Prosecutor: Not normally in the guilt-innocence phase, because we want the jury to focus on the actual action, not the – what somebody may have done in their prior –

Venireperson: Yeah, but wouldn't that be important to know?

Prosecutor: It would be important, but your job, if you are a juror, is to decide the facts of the case based upon the evidence, not based upon what somebody did in the past. And you would be instructed on that. If a prior conviction came out during guilt-innocence, the judge would give you very specific instructions on what you could consider that for. Does that answer your question?

Venireperson: Uh-huh.

During closing arguments, the State argued that Hart had been delusional and paranoid because he had deliberately chosen not to take his anti-seizure medicine, that he was a liar, that he could not have reasonably believed that setting the fire was immediately necessary to avoid harm, and that Hart was reckless.

Hart's counsel argued that Hart's prior convictions were offered to confuse the jurors and to prejudice them against Hart. She asked the jury to set aside those old convictions unless they thought Hart's integrity and credibility were affected by them. She reminded the jury that Hart had made the decisions he did because he had been homeless, and she argued that Hart had reasonably believed that his conduct was immediately necessary to avoid imminent harm because it would summon help to him.

In rebuttal, the State responded that an ordinary and reasonable person would take his anti-seizure medicine and that Hart was, therefore, reckless when

13

he opted not to. The State also argued that Hart had adapted toilet paper into a deadly weapon by igniting it with a cigarette lighter.[12] The trial court included an instruction on necessity in the jury charge, along with two limiting instructions, and the jury found Hart guilty and found that he had used a deadly weapon.

Despite Hart's explanation for setting the fire—which was repeated by several witnesses in addition to Hart himself—the jury was entitled to find that Hart had been reckless in setting the fire and that his belief that setting fire was immediately necessary to avoid imminent harm was not reasonable in light of his deliberate decision not to take his anti-seizure medication.[13]

In light of all of the evidence and the arguments presented at trial, and in the context of the entire case against Hart, we conclude that the admission of evidence that Hart was a sex offender did not have a substantial or injurious

---

[12]We express no opinion about the State's theory in this regard because it was not raised as a point of error on appeal.

[13]During the punishment phase, Hart pleaded true to the enhancement allegation regarding his prior felony convictions. In closing, Hart's counsel reminded the jury that because the punishment range had been enhanced by Hart's admitting to his prior convictions, the jury had to decide from a range of two to twenty years' confinement but that Hart was already a prisoner of his mind. She pointed out that Hart did not mean to burn down a building and that, "[f]or whatever reason, he got the attention he needed." And she pointed out that Hart's previous offenses had been several years prior and that Hart was seventeen years old when he pleaded guilty to the 1996 indecency offense. She also stated that Hart was still paying for that indecency conviction and would be doing so for the rest of his life. She asked that the jury assess only two years' confinement "because this crime is only worth that." The prosecutor agreed that Hart's crime was not worthy of a twenty-year sentence but reminded the jury that Hart had made choices that night and asked the jury to assess five years' confinement. The jury assessed three years' confinement.

14

effect on the jury's verdict and did not affect his substantial rights.  *See King*, 953

S.W.2d at 271.  Therefore, we overrule Hart's sole issue.

## IV.  Conclusion

Having overruled Hart's sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  WALKER, MEIER, and SUDDERTH, JJ.

WALKER, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 8, 2015



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00268-CR

| | | |
|---|---|---|
| Brian Hart | § | From the 371st District Court |
| | § | of Tarrant County (1365673R) |
| v. | § | October 8, 2015 |
| | § | Opinion by Justice Sudderth |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By __/s/ Bonnie Sudderth_____
    Justice Bonnie Sudderth